# In the United States Court of Federal Claims

No. 11-573C
(Filed Under Seal: November 16, 2011)
(Reissued for Publication: December 1, 2011)[*]

```
*************************************
ORION TECHNOLOGY, INC.,              *
                                     *
            Plaintiff,               *
                                     *
v.                                   *
                                     *   Motions to Supplement the Administrative
THE UNITED STATES,                   *   Record; Legibility of Administrative
                                     *   Record; Proposed Substituted Documents
            Defendant,               *   With Differing Pagination; Expert
                                     *   Declaration
and                                  *
                                     *
STRATEGIC RESOURCES, INC.,           *
                                     *
            Defendant-Intervenor.    *
*************************************
```

Charles Cervantes, Arlington, VA, for plaintiff.

Elizabeth A. Speck, United States Department of Justice, Washington, DC, for defendant.

Paul E. Pompeo, Washington, DC, for defendant-intervenor.

**RULING ON THE PARTIES' MOTIONS TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

**SWEENEY**, Judge

     In the above-captioned protest, plaintiff and defendant have filed a number of motions to supplement the administrative record, along with various supporting and opposing memoranda.[1]

---

    [*] The court provided the parties with an opportunity to suggest redactions to this ruling, but in a November 30, 2011 status report, they indicated that no redactions were necessary.

    [1] The court addresses all but one of the motions to supplement the administrative record filed in this protest–defendant's October 19, 2011 motion–because it was ruled upon by the judge

The following decision explains in more detail the oral rulings made by the court on November 3, 2011. In addition, this decision provides the court's rulings and supporting rationale for the motions to supplement filed subsequent to the oral rulings. With respect to these latter motions, the court is compelled to remark that the recent flurry of filings from both plaintiff and defendant, which arose from counsels' inability to confer and agree on documents that are clearly part of the administrative record, was wholly unnecessary. Nevertheless, the court reviewed all of the filings and submits the following ruling.

## I. PROCEDURAL HISTORY

While the protest was pending before Judge Baskir, plaintiff filed two motions to supplement the administrative record, one on October 21, 2011, and the second on October 26, 2011. In its October 21, 2011 motion, plaintiff sought to supplement the administrative record with two groups of documents: (1) a legible copy of the five spreadsheets appearing at pages 866 through 885 of the administrative record and (2) its amended cost/price data prepared in response to Amendment 7 of the solicitation. In its October 26, 2011 motion, plaintiff sought to supplement the administrative record with an expert declaration it submitted to the Government Accountability Office ("GAO") in support of its initial protest before that body. During a November 3, 2011 status conference, the court granted the first part of plaintiff's October 21, 2011 motion, denied the remainder of the motions, and indicated that it would provide a written explanation for its rulings at a later date.

In granting the first part of plaintiff's October 21, 2011 motion, the court directed defendant to file legible copies of the five spreadsheets identified by plaintiff. Defendant filed enlarged versions of the spreadsheets on November 10, 2011, which it created from the Microsoft Excel files plaintiff submitted to the United States Army ("Army") as part of its proposal. Rather than limiting its submission to the spreadsheets identified by plaintiff, however, defendant submitted enlarged copies of every spreadsheet included with plaintiff's proposal, including one that it alleged was inadvertently omitted from the administrative record. Defendant moved to supplement the administrative record with the purportedly omitted spreadsheet.

Upon reviewing the enlarged spreadsheets submitted by defendant, plaintiff determined that the five spreadsheets intended as replacements for those appearing at pages 866 through 885 of the administrative record were not accurate representations of the paper copies of the spreadsheets it submitted to the Army with its proposal. Thus, on November 12, 2011,[2] plaintiff moved to supplement the administrative record with copies of the spreadsheets that were in its

---

originally assigned to the case, the Honorable Lawrence M. Baskir. Judge Baskir granted the motion on October 25, 2011, two days before the protest was reassigned to the undersigned.

[2] Although November 12, 2011, was a Saturday, the court refers to the motion by this date because it is the actual date of filing.

possession. Subsequently, on November 14, 2011, without awaiting the court's ruling, plaintiff filed, for the court's review, a copy of the Cost/Price volume of its proposal containing printed copies of the spreadsheets at issue. Later the same day, plaintiff moved to cancel oral argument on the parties' cross-motions for judgment on the administrative record and schedule a hearing on the supplementation motions.

## II. DISCUSSION

Generally, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973). An administrative record typically contains the materials developed and considered by an agency in making a decision subject to judicial review. See id. at 142-43 (remarking that an agency's finding must be "sustainable on the administrative record made" by the agency at the time of its decision); Cubic Applications, Inc. v. United States, 37 Fed. Cl. 345, 349-50 (1997) ("[T]he primary focus of the court's review should be the materials that were before the agency when it made its final decision."). The administrative record "should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the [Administrative Procedure Act]." Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009). With these precepts in mind, the court addresses each document or group of documents offered by the parties to supplement the administrative record.

### A. Legible Copies of Spreadsheets Already in the Administrative Record

Plaintiff first sought to supplement the record with legible copies of the five spreadsheets appearing at pages 866 through 885 of the administrative record. The administrative record, as submitted to the court on September 21, 2011, contained printed copies of these spreadsheets, but many of the copies were printed too small to be easily readable. Because these spreadsheets were already contained in the administrative record, and because of the importance of having a legible copy of the administrative record for judicial review, the court granted this request during the November 3, 2011 status conference.

Defendant submitted enlarged copies of the five spreadsheets at issue on November 10, 2011, but without any page numbers. It noted that because it generated the enlarged spreadsheets from the Microsoft Excel files submitted by plaintiff with its proposal, the enlarged spreadsheets spanned a greater number of printed pages than the spreadsheets in the original administrative record.[3] From the court's review and comparison, it appears that with two minor exceptions,[4]

---

[3] The spreadsheet for the base year spans from pages 866 to 869 of the administrative record, or four pages, while the enlarged spreadsheet spans six pages. The spreadsheet for the first option year spans from pages 870 to 873 of the administrative record, or four pages, while the enlarged spreadsheet spans five pages. The spreadsheet for the second option year spans from pages 874 to 877 of the administrative record, or four pages, while the enlarged spreadsheet spans five pages. The spreadsheet for the third option year spans from pages 878 to 881 of the

while some of the rows have shifted from one page to the next, all of the substantive data present in the original administrative record appears in the enlarged spreadsheets.

Plaintiff nevertheless objects to defendant's submission of the enlarged spreadsheets, alleging that they were altered by the Army through erroneous pagination, removal of footers,[5] and alteration of columns and rows.  These complaints appear to arise from the fact that the pagination of the enlarged spreadsheets does not match the pagination of the spreadsheets in the original administrative record or the pagination of the printed spreadsheets that plaintiff submitted to the Army as part of its proposal.  The differences in pagination, which are caused in part by defendant generating the enlarged spreadsheets from the Microsoft Excel files submitted by plaintiff as part of its proposal rather than from the printed copies of the spreadsheets that plaintiff also submitted as part of its proposal,[6] do not represent differences in the substance of the spreadsheets.  Indeed, plaintiff has not identified any substantive data included in the spreadsheets it submitted as part of its proposal that is missing from the enlarged spreadsheets.[7]  The court will not exclude defendant's submission merely because the spreadsheets span across more pages than they do in other copies of the same spreadsheets.

---

administrative record, or four pages, while the enlarged spreadsheet spans five pages.  The spreadsheet for the fourth option year spans from pages 882 to 885 of the administrative record, or four pages, while the enlarged spreadsheet spans five pages.

[4] The enlarged spreadsheets for the base year and the first option year each contain summary rows at the end of the spreadsheet that were not present in the original administrative record.  However, in the original administrative record, the summary rows were present in the spreadsheets for the final three option years.  Accordingly, it appears that the summary rows in the spreadsheets for the base year and the first option year were inadvertently omitted.

[5] The footers appeared in the printed copies of the spreadsheets plaintiff submitted with its proposal and contained a page number.

[6] Defendant was entitled to submit copies of the spreadsheets derived from the Microsoft Excel files submitted by plaintiff as part of its proposal rather than copies of the spreadsheets derived from plaintiff's printed proposal.  The substantive data in the electronic and printed versions of the spreadsheets should be identical–plaintiff does not allege otherwise.

[7] Omission of the footers is harmless.  Plaintiff contends that the footers contained page numbers that are necessary for the court to locate and identify relevant data, but none of the parties cite to any specific data contained in these spreadsheets in their dispositive motions or supporting memoranda.  Even if citation to a particular data point in one of the spreadsheets was necessary, it could easily be done using the enlarged spreadsheets submitted by defendant and numbered by the court as described below.

Accordingly, the court denies plaintiff's request to supplement the administrative record with its own copies of the spreadsheets, strikes from the docket the Cost/Price volume filed by plaintiff on November 14, 2011, and supplements the administrative record with the enlarged spreadsheets submitted by defendant that corresponded to the spreadsheets appearing at pages 866 through 885 of the administrative record. Because the pagination of the enlarged spreadsheets differs from the original administrative record, however, the court cannot substitute the enlarged spreadsheets for the original ones. Instead, it adds the enlarged spreadsheets to the administrative record as new documents. The court will therefore number the spreadsheets beginning with page number 1220. Thus, the enlarged spreadsheet for the base year will span from pages 1220 to 1225, the first option year will span from pages 1226 to 1230, the second option year will span from pages 1231 to 1235, the third option year will span from pages 1236 to 1240, and the fourth option year will span from pages 1241 to 1245.

### B. Amended Cost/Price Data

Plaintiff next sought to supplement the administrative record with the amended cost/price data it prepared in response to Amendment 7 of the solicitation. The Army, however, did not consider this data when it eliminated plaintiff's proposal from the competition or at any later point in time. Indeed, because the Army issued Amendment 7 after it eliminated plaintiff from the competition, any materials prepared by plaintiff in response to Amendment 7 could not have been considered by the Army in its decision to exclude plaintiff. And, from the Army's point of view, once it had excluded plaintiff from the competition, it was not obligated to consider additional materials submitted by plaintiff. Because the Army did not consider plaintiff's amended cost/price data, access to this data would not assist the court in reviewing the Army's conduct in this procurement. The court therefore denied plaintiff's request to supplement the administrative record with this data during the November 3, 2011 status conference.

### C. The Declaration Submitted to the GAO During the GAO Protest

Plaintiff also sought to supplement the administrative record with an expert declaration that it first submitted to the GAO in support of its initial protest before that body. Plaintiff retained the expert, at a rate of $300 per hour, to opine on the propriety of the Army's rejection of plaintiff's proposal. The expert, a former Army procurement official with more than thirty-two years of experience, based his conclusion that the Army acted improperly on his review of the solicitation, plaintiff's Cost/Price volume, the spreadsheets included in that volume, and the letter explaining the Army's elimination of plaintiff's proposal from the competition. He did not have access to the remaining documents in the administrative record currently before the court.

By statute, certain materials relating to a GAO protest must be included in the administrative record that is subject to judicial review, such as an agency's report to the GAO in response to a protest and the GAO's decision on the protest. 31 U.S.C. § 3556 (2006). The Rules of the United States Court of Federal Claims ("RCFC") further provide that an

administrative record in a bid protest includes, in part, relevant core documents. See RCFC App. C, ¶ 23. These core documents "may include, as appropriate, . . . the record of any previous administrative or judicial proceedings relating to the procurement, including the record of any other protest of the procurement." Id. ¶ 22(u).

While the declaration offered by plaintiff was part of the record before the GAO, it is not required to be made a part of the administrative record that this court reviews. See CRAssociates, Inc. v. United States, 95 Fed. Cl. 357, 378 n.18 (2010) (noting that "several decisions in this court have recently refused to include in the administrative record documents previously filed by private litigants in GAO protests"); Allied Tech. Grp., Inc. v. United States, 92 Fed. Cl. 226, 230-31 (2010) ("Appendix C, ¶ 22(u) employs the words 'may' and 'as appropriate,' leaving it to the Court's reasoned discretion to determine when materials should be added to the administrative record. Inclusion of documents in the record of a GAO protest is not an automatic ticket that the same documents will be added to the administrative record before the Court."); see also id. at 229 (denying motions to supplement the administrative record with declarations that were part of the record before the GAO because they "provide[d] no more than opinion testimony intended to refute arguments set forth in [the competing] declarations" and "would not assist the Court in determining whether the agency's award decision was rationally made"). But see Holloway & Co. v. United States, 87 Fed. Cl. 381, 392 (2009) ("On numerous occasions, parties file protests with this court after having failed to obtain relief before GAO, and paragraph 22(u) of RCFC Appendix C ensures that GAO and the court are reaching decisions on protests based upon the same materials. It would be strange for this court to be addressing a protest on a more truncated record than that which had been before GAO."). Further, there is no evidence that the GAO considered the declaration in denying plaintiff's protest, as it was not cited in the GAO's decision. See AR 1202-08.

Finally, consideration of the expert declaration would not assist the court in providing meaningful judicial review of plaintiff's protest. The court's review of the Army's decision to exclude plaintiff from the competition is limited to determining whether the Army's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004). Consideration of an expert opinion directed solely at the propriety of the Army's decision, like the expert opinion here, risks improperly converting the court's more deferential undertaking into a de novo review. See Allied Tech. Grp., Inc., 92 Fed. Cl. at 231 (remarking that if it accepted declarations offered by the protester and intervenor, its "review of the record would be transformed to de novo review, in direct contradiction of the Federal Circuit's holding in Axiom"); PlanetSpace, Inc. v. United States, 90 Fed. Cl. 1, 6 (2009) (striking a declaration offered by the protester that was "devoted entirely to re-arguing the merits of [the] award decision" because it was "prototypical of the kind of extra-record evidence against which the court must guard, lest it convert the arbitrary and capricious standard into effectively de novo review" (internal quotation marks omitted)); see also Al Ghanim Combined Grp. Co. Gen. Trad. & Cont. W.L.L. v. United States, 56 Fed. Cl. 502, 511-12 (2003) (rejecting the protester's attempt to rely on expert declarations "to bolster its argument that the Government improperly reviewed [its] proposal" because the declarations did

not "fill a gap in the record or provide clarification necessary for the court to rule on the cross-motions"). Moreover, if the court cannot substitute its judgment for that of the agency, Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), it would be nonsensical for it to consider or adopt an opinion from a putative expert attempting to accomplish the same thing, namely, substitute his judgment for that of the agency. The rationale for according deference to the agency is particularly compelling here, where the proffered expert's declaration clearly demonstrates that the expert has no ties to the procurement at issue and that his opinion is based on a limited body of evidence. Accordingly, the court denied plaintiff's motion to supplement the record with its expert's declaration during the November 3, 2011 status conference.

### D. The Spreadsheet Purportedly Absent From the Administrative Record

Defendant seeks to supplement the administrative record with a copy of a spreadsheet from plaintiff's proposal titled "ODC & Travel" that it believes was omitted from the administrative record. A review of the administrative record indicates that the spreadsheet is, in fact, included in the record. See AR 784-815. The new copies provided by defendant, however, are much easier to read than the copies currently in the record. Due to the importance of having a legible administrative record, the court grants defendant's motion.

### E. Other Documents Submitted by Defendant

Finally, in its November 10, 2011 submission, defendant included enlarged versions of all of the spreadsheets plaintiff submitted with its proposal. Because neither plaintiff nor defendant has moved to supplement the record with enlarged or legible versions of pages 816 through 865 or pages 886 through 923 of the administrative record, the court strikes those parts of defendant's submission that correspond to these pages.

### III. CONCLUSION

As set forth above, the court:

- **SUPPLEMENTS** the administrative record with the enlarged spreadsheets submitted by defendant that correspond to those appearing at pages 866 through 885 of the administrative record;

- **GRANTS** defendant's November 10, 2011 motion to supplement the administrative record with the spreadsheets corresponding to those appearing at pages 784 through 815 of the administrative record;

- **STRIKES** from the docket those portions of defendant's November 10, 2011 submission that correspond to pages 816 through 865 and pages 886 through 923 of the administrative record;

- **DENIES** plaintiff's November 12, 2011 motion to supplement the administrative record with its own copies of the spreadsheets that appear at pages 866 through 885 of the administrative record; and

- **STRIKES** from the docket the Cost/Price volume filed by plaintiff on November 14, 2011.  The court will return the Cost/Price volume to plaintiff at the oral argument scheduled for November 17, 2011.

Further, because the court has resolved all of the outstanding motions to supplement the administrative record, it **DENIES** plaintiff's request to cancel the oral argument on the parties' cross-motions for judgment on the administrative record and schedule a hearing on the supplementation motions.

The court has filed this ruling under seal.  The parties shall confer to determine proposed redactions agreeable to all parties.  Then, by **no later than Wednesday, November 30, 2011**, the parties shall file a joint status report indicating their agreement with the proposed redactions, **attaching a copy of those pages of the court's ruling containing proposed redactions, with all proposed redactions clearly indicated.**

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge